IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LINDSAY LEVEEN, )
Plaintiff, ) Case No.
vs. ) 21-1658C
THE UNITED STATES OF AMERICA, )
Defendant. )

Via Teleconference
Thursday, October 28, 2021
2:30 p.m.
Status Conference

BEFORE: THE HONORABLE CHARLES F. LETTOW

Transcribed by: Sara J. Vance, CERT

APPEARANCES:

ON BEHALF OF THE PLAINTIFF:

LINDSAY LEVEEN, PRO SE
80 Lincoln Drive, Unit 1A
Sausalito, California 94965
(415) 336-5508
lleveen@gmail.com

ON BEHALF OF THE DEFENDANT:

JOHN M. MCADAMS, ESQ.
U.S. Department of Justice - Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 307-0226
john.m.mcadams@usdoj.gov

P R O C E E D I N G S

- - - - -

(Proceedings called to order.)

THE COURT: The case before the Court this afternoon is Leveen vs. United States. The number is 21-1658.

Mr. Leveen, would you please announce yourself as the Pro Se Plaintiff in the case?

MR. LEVEEN: This is Lindsay Leveen from Sausalito, California, and I am the Plaintiff.

THE COURT: Thank you.

And, Mr. McAdams, would you please announce yourself as counsel for the Government?

MR. MCADAMS: Yes. Good afternoon, Your Honor. John McAdams for the United States.

THE COURT: Is there anyone with you, Mr. McAdams?

MR. MCADAMS: No, Your Honor. It's just me.

THE COURT: All right. Thank you.

We have the motion by the Government to dismiss. Mr. McAdams, why don't you proceed.

MR. MCADAMS: Yes. Thank you, Your Honor. May it please the Court. Mr. Leveen's complaint should be dismissed for lack of subject matter jurisdiction because Mr. Leveen has not identified a substantive source of law

creating a right to the sort of whistleblower fee he seeks. Alternatively, even if the Court can exercise jurisdiction, the complaint should be dismissed for failing to state a claim upon which relief can be granted because Mr. Leveen has not made a plausible claim for relief.

Additionally, to the extent Mr. Leveen’s responses to our motion suggest his suit consists of a claim against a party other than the United States, criminal allegations, tort claims, or a claim for punitive damages against the United States, those are all varieties of claims that are beyond the scope of the Court’s jurisdiction.

Accordingly, Your Honor, we respectfully request that the complaint be dismissed. Thank you.

THE COURT: Anything further, Mr. McAdams?

MR. MCADAMS: Nothing further pending the Court’s questions, Your Honor.

THE COURT: All right. Thank you. I wasn’t aware that Mr. Leveen had actually made a complaint or included in his claim or stated a separate claim for damages or punitive damages against the private party. Where is that?

MR. MCADAMS: I’m referring to Mr. Leveen’s amended complaint, Your Honor --

THE COURT: Yes.

MR. MCADAMS: -- that was docketed just yesterday.

THE COURT: Yes.

MR. MCADAMS: And Mr. Leveen in his amended complaint asked for $411,000 in punitive damages against the United States, Judge.

THE COURT: Well, against the United States but not against the private party.

MR. MCADAMS: Excuse me, I apologize, Judge. I was on mute just there. Yes, that's correct, Judge. Punitive damages against the United States.

THE COURT: Right, exactly. That is not independent from the other claim he made for the tipster's fee, as the Court takes it.

MR. MCADAMS: Yes, Your Honor --

THE COURT: Whatever, he wants -- go ahead.

MR. MCADAMS: -- we understand the punitive damages are in addition to the whistleblower fee he seeks. That's correct, Your Honor.

THE COURT: Oh, okay. All right. Thank you. That helps. Anything further, Mr. McAdams?

MR. MCADAMS: Nothing further at this time, Your Honor.

THE COURT: All right. Thank you.

Mr. Leveen, why don't you proceed.

MR. LEVEEN: May I please the Court, Your Honor, and give a little bit of background?

THE COURT: Yes, certainly.

MR. LEVEEN: Okay. So I feel the Court must be aware of the background of Bloom Energy and how this company extracted over $2 billion in subsidies from taxpayers and ratepayers while lying about HAZMAT and air emissions. The lie about the HAZMAT was invented to cite a power station in the protected coastal zone of Delaware. Bloom lied in 2011 under the penalty of perjury in a permit application that there was no HAZMAT.

I discovered this lie in 2012 and alerted the authorities in Delaware about the lie. They chose to cover up the lie because of political pressure on them because of jobs Bloom would bring to Delaware. I contacted the Federal Trade Commission in October of 2012 when the U.S. passed laws under the Green Guides about greenwashing. And so far the Federal Trade Commission has done zero to address my complaints in nine years.

The sad thing about this Bloom project in Delaware is that Bloom did not even maintain the power plant. They let it become dilapidated, even though they were paid over $100 million in subsidies and took $75 million of Section 1603 tax credits. In order to rebuild

the power station after it became dilapidated, they again lied, but this time they lied about carbon emissions. So this company basically lives on lies.

Now, the EPA did fine Bloom for the HAZMAT that I alerted first the FTC and then the EPA to. I don't think the EPA contests that I am the tipster. I don't think the EPA contests that they fined Bloom. And they just won't tell me why they won't pay me for being the tipster.

And that's way I came to the Court, and I came to this Court because it was simple to file in this Court. I don't have lawyers. I don't have a team of lawyers. I don't have the money to file in District Court. And I believe this Court is the right place for this claim. That's my statement. Thank you, Your Honor.

THE COURT: Mr. Leveen, I take it, is the power -- is the plant actually operating in Delaware?

MR. LEVEEN: The second rebuilt plant is operating in Delaware. The first plant was demolished.

THE COURT: All right. That helps. I take it the claim for a finder's fee or a tipster's fee was filed with the Federal Trade Commission, not EPA. Is that correct?

MR. LEVEEN: No. EPA was the one that -- that actually fined Bloom. Although the FTC has jurisdiction

of the Green Guides, they've been reluctant to do anything because of political pressure, and that political pressure came from my senator, Senator Feinstein.

THE COURT: Aha.

MR. LEVEEN: I have -- I have millions of page -- tens of thousands of pages under FOIA of all the -- I'll call it corruption -- that went on between Bloom and the Federal Government and state governments.

THE COURT: Mr. Leveen, in your complaint and amended complaint, you indicate that you filed your claim for a tipster's fee over nine years ago. With whom -- with which agency did you file your tipster's fee claim?

MR. LEVEEN: I alerted the Government to the HAZMAT nine years ago. I went to the EPA after the fine was made, and the fine was kept a secret. I had to find out about the fine from other sources, from Bloom's filings with the SEC and then under FOIA. So the fine was made in -- in December of last year, 2020. I then asked the EPA for my tipster fee early in 2021. They ignored me.

I then wrote a demand letter that I was intending to sue to the EPA. They ignored that. After a month and a half after I wrote that intent to sue letter, I filed this claim.

THE COURT: All right. That helps. The chronology clarifies a confusion that arose in our minds -- the Court’s mind -- as a result of your reference to nine years in your complaint and amended complaint.

MR. LEVEEN: Right.

THE COURT: What relief are you actually seeking Mr. Leveen?

MR. LEVEEN: I actually do not really care too much about the money, Your Honor. I care that I asked my congressman, Mr. Huffman, to help me, and he told me no one would listen to me. I asked my senator to help me. I asked various state people to help me, and they all were complicit in this Bloomdoggle.

I was interviewed in 2014 by NBC, and I have the copy of the interview -- the full interview because I have it on tape, and I told them about the HAZMAT. And NBC spiked the HAZMAT story after Bloom got to them. I think that someone like Vice President Al Gore actually spoke to NBC to squash the story. This is how powerful this company is.

They had Colin Powell on their board of directors for 12 years until he passed away. This is a powerful company that controls the Government. I’m just a little guy asking for relief in a court, and I don’t have lawyers. If the Government wants me to go to

District Court, I'll drop the case, because it's not about the money, Your Honor. It's about the honor of someone who studied thermodynamics, wrote a textbook on fuel cells and hydrogen, getting some respect in this country.

THE COURT: Well, the Court certainly respects that achievement on your part. The Court's undergraduate degree is in chemical engineering as it is, and I certainly respect your achievements in the field. Part of the problem the Court is having with the case is finding jurisdiction to rule at all. That's the basis and genesis of the Government's motion. That's the part that the Court is struggling with.

MR. LEVEEN: Your Honor, I can't tell you how to find that. I can only tell you what I did. I did it for my country, I did it for the planet, and I did it for the sake of science.

THE COURT: Well, I take it, though, the original plant Bloom Energy had is now completely defunct and demolished and the new plant has a different source for its energy needs. Is that correct?

MR. LEVEEN: No.

THE COURT: No?

MR. LEVEEN: They still basically have the HAZMAT.

THE COURT: Okay.

MR. LEVEEN: They use natural gas, and may I explain to you how they use the natural gas?

THE COURT: Yes, certainly.

MR. LEVEEN: So they have catalysts in a fuel cell. These catalysts get poisoned by sulfur-containing materials. Natural gas has hydrogen sulfide, carbonyl sulfide, mercaptan, and other sulfur-containing compounds. And typically they're at about 50 parts per million in the pipeline natural gas. It has to be reduced to less than ten parts per billion in order to not poison the catalysts. So they create --

THE COURT: What is the catalyst?

MR. LEVEEN: The catalysts are basically things like rare earths that they get from China. Scandium is one of their catalysts.

THE COURT: But it's not platinum? It's not a platinum-based catalyst?

MR. LEVEEN: No, no. It's scandium and other rare earths.

THE COURT: Right.

MR. LEVEEN: They're probably the biggest user of scandium in the world. So they use natural gas. They create this HAZMAT because they have to trap the sulfur on the filter, but there's other things in natural gas

like lead, chromium, arsenic, benzene, toluene, and dozens of other chemicals that get trapped on the filters. These filters become the HAZMAT. And they still do that.

Now, the EPA has sided with Bloom that this HAZMAT can be sent to Indiana to a company called ShoreMet, and this happened about a year and a half ago that they came up with a new ruling at the EPA. And ShoreMet pickles the HAZMAT in hydrochloric acid to recover copper. So Indiana, the EPA, California's State EPA have all come up with a ruling that the HAZMAT is no longer HAZMAT; it's a raw material. But it's got all these horrible things like lead, arsenic, chromium, benzene, and then ShoreMet has to deal with all the HAZMAT after they've pickled it.

THE COURT: What happens to the plant or the catalysts, the scandium? Do they recover the scandium?

MR. LEVEEN: So after -- Bloom claims their catalysts last five years. The real data is that after three years they have to replace the fuel cell stack, and they deal with that in-house. They probably do recover the scandium.

THE COURT: One would think so. Anyway, but that is separate and apart from the treatment in Indiana. Is that correct?

MR. LEVEEN: Exactly.

THE COURT: Okay.

MR. LEVEEN: And I believe -- I believe the EPA under Wheeler and under Pruitt didn't really care about the environmental effects of all this HAZMAT. The fine was minuscule relative to the quantity of HAZMAT. Your Honor, there were 225 shipments of HAZMAT to nonpermitted receiving facilities. That means it went into solid -- into landfills. This is in the fine statement that EPA made to Bloom in December of last year.

THE COURT: All right. That helps. Anything further?

MR. LEVEEN: So my -- my contention --

THE COURT: Go ahead.

MR. LEVEEN: -- is that the fine should have been ten times as large as it should -- as it was.

THE COURT: Well, that's in the Government's discretion.

MR. LEVEEN: Other companies -- right, but I think there was a lot of political pressure. In fact, Senator Murkowski loaned her general counsel to the Senate Energy Committee, Mr. McCormick, to be an employee of Bloom, to be a vice president of Bloom, for two years. And after the fine was set, he returned from Bloom back to the U.S. Senate.

I'm not saying that he's a criminal. He did what was told to do, which is get the least fine. But I'm saying that this is really not how a true democracy and republic works and that someone with science and background is shunned and disregarded and treated as a second-class citizen.

THE COURT: All right. You understand, though, that the Court is still struggling with the jurisdictional question of whether the Court has juristical power to exercise resolution --

MR. LEVEEN: I absolutely understand that, Your Honor, and if you rule that I don't have standing and that this is not the right court, I accept that, you know, that I've had my day in court. I've stated what I've stated. I'm not a lawyer. I don't know about jurisdictions, but I don't know where to turn.

THE COURT: Well, I hope Sausalito is still a pleasant place in which to live anyway.

MR. LEVEEN: Oh, it's fantastic, Your Honor. It's 70 degrees. I see the Bay. The sky is clear. It's wonderful.

THE COURT: That's terrific. Are there still good restaurants down by the Bay?

MR. LEVEEN: Yeah, exactly. It's beautiful. It's probably the most pretty place I've ever lived.

THE COURT: Okay.

MR. LEVEEN: Except for Ames, Iowa, which was cold.

THE COURT: Yeah, I went to law school in the Bay Area or sort of in the Bay area and used to enjoy lunches and dinners in Sausalito on occasion.

MR. LEVEEN: Your Honor, come and visit me anytime, no matter how you rule. I'll buy you a lunch.

THE COURT: All right. Thank you. Mr. Leveen, do you have anything further?

MR. LEVEEN: No. That's it, Your Honor.

THE COURT: All right. Thank you.

Mr. McAdams, do you have anything?

MR. MCADAMS: Nothing further at this time, Your Honor. Thank you.

THE COURT: All right. Thank you. With that, we've heard the motion to dismiss and the counterclaim, that is the claims in the complaint, and we understand what's going on, and we thank you very much. We're in adjournment.

MR. MCADAMS: Thank you, Your Honor. Good afternoon.

MR. LEVEEN: Thank you.

(Whereupon, the hearing was adjourned.)

CERTIFICATE OF TRANSCRIBER

I, Sara J. Vance, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-titled matter.

DATE: 11/8/2021 S/Sara J. Vance
SARA J. VANCE, CERT